■ In the Matter of ALBERT E. KIEFFER, JR., Petitioner, v NEW YORK STATE THRUWAY AUTHORITY, Respondent.—Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent terminating petitioner from his employment.

Petitioner, a Thruway toll collector for some seven years, was served with formal disciplinary charges on May 21, 1986. There were three charges. The first (charge I) was for incompetence, i.e., petitioner's inability or unwillingness to fulfill the duties of his position. The single specification for this charge alleged petitioner's receipt of unsatisfactory performance ratings for poor attendance and work performance for the rating periods July 1, 1983 to June 30, 1984 and July 1, 1984 to June 30, 1985. The second (charge II) was for misconduct (insubordination) in failing to provide medical documentation to substantiate petitioner's absences, as required by his supervisor. The specification for this charge was that, despite having received the first unsatisfactory performance rating for poor attendance, petitioner continued to fail to provide medical documentation for absences on some 19 enumerated dates thereafter, from November 19, 1984 to January 25, 1986. The third (charge III) was also for misconduct, in extending his time off without authorization. The specification for this charge recited that, on 12 identified dates between December 8, 1984 and June 25, 1986, petitioner took unauthorized absences in extension of his time off and was absent on the day after payday.

Following a hearing on October 2, 1986, pursuant to Civil Service Law § 75, at which petitioner was defended by a union representative, the Hearing Officer sustained all three charges. The Hearing Officer found that petitioner had an attendance problem virtually from the beginning of his employment with respondent, consisting mostly of excessive unscheduled and unsubstantiated absences, despite his having been repeatedly directed to furnish medical documentation therefor. It was further found that this attendance record and other work deficiencies resulted in three successive unsatisfactory annual performance ratings for the period beginning July 1, 1983 and ending June 30, 1986. Although the Hearing Officer rejected the charge that petitioner had a pattern of absences after payday, he did conclude that there was a higher incidence of absences both before and after regularly scheduled days off sufficient to sustain the third charge. The Hearing Officer recommended the penalty of termination of employment. Respondent accepted the Hearing Officer's findings and recommendation. This CPLR article 78 proceeding to review that determination followed.

The first ground for annulment urged by petitioner is that, in sustaining the charge of incompetence, the Hearing Officer relied in part upon evidence of cash variances in petitioner's

collection of tolls from July 1, 1984 to June 30, 1985 and upon petitioner's receipt of an unsatisfactory performance rating for the period July 1, 1985 to June 30, 1986. Petitioner contends that neither factor was set forth in the formal charges or specifications and that, therefore, basing the determination thereon denied him due process. We disagree.

As to the cash variances, these were specifically referred to in the unsatisfactory performance ratings which petitioner received in 1984 and 1985. Those ratings were previously served on petitioner and accepted by him without challenge through available administrative appeal procedures. The specification in charge I is expressly based upon the same unsatisfactory ratings "for poor attendance and work performance". Therefore, petitioner was clearly put on notice that the cash variances identified in the ratings as instances of his unsatisfactory work performance were within the subject matter of the instant disciplinary charges.

Regarding the unsatisfactory rating for the period July 1, 1985 to June 30, 1986, petitioner received the written report of that rating on June 24, 1986, one month after this disciplinary proceeding was commenced. The uncontradicted evidence was that he was told in late January 1986 that his continued undocumented absences after the preceding rating period would result in both the filing of disciplinary charges and a third unsatisfactory performance rating. Moreover, in principal part, the third unsatisfactory rating was expressly based upon the same record of undocumented and unauthorized absences following the 1985 rating report which was particularized in the specifications to charge II and III in the instant matter. Finally, on this issue, the record reveals that the 1986 unsatisfactory rating to which petitioner now objects was offered and received in evidence at the hearing as a joint exhibit of respondent and petitioner. Although it would have been the better practice for respondent to have amended the charges and specifications to add reference to the 1986 unsatisfactory performance rating, under the foregoing circumstances it cannot reasonably be contended that petitioner was deprived of notification that this rating or its contents would be considered by the Hearing Officer in the proceeding. Due process only requires that a person subject to disciplinary charges be given notice sufficient to afford him a reasonable opportunity to prepare and present a defense or explanation (see, Matter of Fitzgerald v Libous, 56 AD2d 981, affd 44 NY2d 660; Matter of Bateman v City of Ogdensburg, 55 AD2d 781).

Equally unpersuasive is petitioner's alternative argument

for annulment, i.e., that the record lacks substantial evidence to support the determination. We find nothing inconsistent with respondent's determination on charge I as contrasted with the fact that prior to 1984, petitioner received satisfactory performance ratings with a record of nonattendance similar to that which later provoked this disciplinary action. Petitioner was repeatedly counseled concerning his unsubstantiated absences in the earlier period. When this proved to be ineffective to improve his behavior, respondent resorted to giving him unsatisfactory ratings for two successive annual periods, and when this also was unavailing, brought these charges. The foregoing graduated response was entirely consistent and reasonable.

Next, petitioner argues that the finding of insubordination (charge II) should not have been sustained because respondent could not, under the collective bargaining agreement, direct petitioner to furnish medical documentation for his absences and, in fact, did not do so. We agree with the Hearing Officer's ruling that the contract authorized such a direction to an employee who claimed sick leave for absences either before or after a regular day off (as did petitioner), and for any absence once an employee had been placed on restrictive leave (as was petitioner). It is noteworthy that petitioner never resorted to the contract's grievance procedure to dispute respondent's interpretation of the contract that it had the right to make such a direction. Likewise, the evidence clearly established that petitioner was so directed. The record is replete with instances where petitioner was counseled that his medically undocumented absences for which he claimed leave were disruptive and onerous to respondent, both as to the administrative burden on his superiors to find last-minute replacements and also the bookkeeping burden of removing him from the payroll for the days of his unauthorized absences.

The uncontested evidence of petitioner's persistent and continued disregard of these efforts to obtain his compliance amply supported the conclusion that the misconduct alleged under charges II and III was willful, and also justifies the imposition of the penalty of termination (see, *Matter of Santarella v New York City Dept. of Correction*, 53 NY2d 948, 949).

Determination confirmed, and petition dismissed, with costs. Mahoney, P. J., Main, Casey, Weiss and Levine, JJ., concur.